## Case No. 3,511.

### CUSHING v. SMITH et al.

[3 Story, 556.] [1]

Circuit Court, D. New Hampshire. Oct. Term, 1844.

TRUSTS FOR BENEFIT OF CREDITORS — PURCHASE BY TRUSTEE INDIVIDUALLY—LACHES AND ACQUIESCENCE OF OTHER TRUSTEES—BONA FIDE PURCHASERS—EQUITY PLEADING—BURDEN OF PROOF.

1. A made an assignment of all his property to B, C, D, and E, in trust, to pay his debts. Among the property assigned was a large debt from Messrs. F and M, on which an action was brought, and judgment recovered, and execution levied by selling an equity of redemption in the Folsom farm, mortgaged to the Granite Bank, but owned by F and M. This equity was purchased by B, one of the assignees, and subsequently sold to the defendant, Smith, Jr., the latter mortgaging the property to B, to secure his notes for the purchase money. B conveyed the mortgage and two of the notes, to the defendant Rice, for a debt due to B from Goddard, of whom Rice was administrator. The mortgage held by the Granite Bank was subsequently conveyed to the defendant, Smith, Jr., and, at the time of the filing of the bill, was foreclosed. The present bill was brought by one of the assignees, to enable the assignees to obtain a decree for the redemption of the Folsom farm, as against Smith, Jr., and as against Rice, to obtain a surrender of the mortgage and notes,—and charged that the conveyance to B was made to him as an assignee, and not in his own right. It was *held*, that, as no deed from the sheriff, conveying the equity of redemption to the assignees, appeared, and its absence was not accounted for, but the only deed shown was to B, alone, who declared that he bought on his own account; and as the assignees had acquiesced in the possession and foreclosure of the mortgage by him, without objection; it must be considered as belonging personally to B,—the onus probandi being on the plaintiff to show the contrary, which he failed to do.

2. *Held*, also, that, under the circumstances of the case, Smith, Jr., was a bona fide purchaser, without notice of any equity on the part of the assignee; and that his title was completely established by the foreclosure of the mortgage, under the requirements of the statutes of New Hampshire.

3. *Held*, also, that the plaintiff could not, in the argument, take advantage of the objection, that the publication in the newspaper of an intention to foreclose, as required by the statute, was not established by any copy of the newspaper, but only by two witnesses: but that the objection should have been made at an earlier period; or the prima facie evidence of the witnesses should have been disproved.

4. Where denials to allegations in the bill are made in the answer, the onus probandi is on the plaintiff to overcome such denials by the testimony of two witnesses, or of one witness and other corroborative facts.

Bill in equity. The bill set forth, in substance, that on April 13th, 1829, Jacob Cutter assigned to Clement Storer, James Shapley, Charles W. Cutter, and Charles Cushing, (the plaintiff), all his property in trust for the payment of his debts, as stated in a schedule annexed to the assignment, and that by virtue thereof, a large amount of property and effects came into the hands of the said assignees, for which they have never ac-

---

[1] [Reported by William W. Story, Esq.]

counted. That on the day of the execution of said indenture, and prior thereo, Arthur Folsom and William McCulloh, both of Jeremie, in the island of Hayti, were indebted to the said Jacob Cutter in a large amount of money, as in the said indenture is set forth, and that on the 8th day of April, A. D. 1829, the said Cutter sued out a writ against the said Folsom and McCulloh, and on the 1st Tuesday of August, A. D. 1834, recovered judgment against the said Folsom, for the sum of four thousand six hundred and fifty dollars damages, and ten dollars cost of suit; and the said Shapley, Cushing, and Cutter, on the 22d day of August, A. D. 1834, sued out a writ of execution upon the said judgment, and on the 6th day of September, A. D. 1834, delivered the said execution to Samuel Larkin, a deputy sheriff of the said county of Rockingham, to be served, and executed, and returned, according to law, and such proceedings were then and there had upon the said execution, by the said Larkin, in due course of law, that the said Larkin, on the 20th day of October, A. D. 1834, sold thereupon, and in satisfaction thereof, at public auction, to the said Shapley, Cushing, and Cutter, who purchased the same as assignees, as aforesaid, and conveyed to them, and their heirs and assigns, all the right in equity of the said Arthur Folsom, of redeeming a tract of land, situated in Newington in the said county, being the Folsom farm, so called, for the price of two thousand five hundred dollars; and the said Shapley, Cushing, and Cutter, thereby became seized of the same right in fee simple, as assignees in the trusts set forth in the same indenture. And the said Arthur Folsom, at the time of the said conveyance, owned and was seized in fee of the said land, subject only to a mortgage made to Nathaniel Gilman, dated October 1st, 1825; and the said land was worth twenty-five hundred dollars more than said mortgage debt. And on the 7th day of July, A. D. 1835, the said Charles W. Cutter sold and conveyed to one Samuel Smith, and his heirs and assigns, all his right, title and interest in the said equity of redemption, for the price and consideration of two thousand and five hundred dollars, secured to be paid by the said Smith, to the said Cutter, and the said Samuel Smith, on the sixteenth day of May, A. D. 1836, sold and conveyed his right and interest in the land aforesaid, to James Smith, junior, his heirs and assigns, for the price of two thousand and five hundred dollars, which the said James Smith, junior, secured to be paid for and on account of the said Samuel Smith, to the said Charles W. Cutter. And the said James Smith, junior, on the second day of December, A. D. 1836, made and executed to the said Charles W. Cutter, and his heirs and assigns, a deed of his right in the said lands, conditioned to be void, provided the said James Smith, junior, should, on or before April the 1st, A. D.

1838, pay to the said Cutter, $2800.00, according to the said Smith's notes, each for $833.33, dated the seventh day of July, A. D. 1835, and signed by the said James Smith, and by the firm of E. & S. Smith, and the said James Smith's draft on the said E. & S. Smith, by them accepted, for $876.27, payable in sixty days, dated April 18th, A. D. 1836, which notes and draft, or certain other notes, which formed the consideration of the said notes and draft, were made and delivered to secure the price of the right in said farm, sold and conveyed by the said Cutter, as aforesaid. And the said Charles W. Cutter, afterwards, on or about the ninth day of January, A. D. 1833, transferred to Robert Rice, as administrator of the goods and estate of John T. Goddard, deceased, of the said Portsmouth, the said mortgage, with part or all the securities mentioned in the condition thereof. And the said Rice, at the time of the said transfer, had been informed and well knew, or had reason to suspect and believe, that the said Cutter held the said right in equity of redemption of the said lands as aforesaid, not as his own absolute property and estate, but only upon the trust specified in the said indenture. And the said notes and drafts, or so many thereof as were assigned to the said Rice, were transferred to him long after the same became due and payable. And the said mortgage, made by the said Arthur Folsom to the said Nathaniel Gilman, hereinbefore set forth, and the balance remaining due upon the debt therein mentioned, and intended to be secured, were on the 22d day of April, A. D. 1835, duly and legally assigned by the said Nathaniel Gilman to Nathaniel Gilman 3d, and on the same day, to the president, directors, and company of the Granite Bank, by the said Nathaniel Gilman 3d. And the said James Smith, junior, on the thirteenth day of July, A. D. 1836, paid the said president, directors, and company of the said Granite Bank, on account of the said debt secured by the said mortgage, the sum of twenty-nine hundred and eighty-eight dollars and forty-seven cents, which was the balance which remained due thereon. And the plaintiff further shows that the said James Shapley, after the execution of the said indenture, viz: on or about the first day of January, 1830, sold the ship Neptune, in the said indenture mentioned, for a large sum of money, and received the proceeds thereof to his own use; and also, in like manner, received the earnings of the said ship, and hath never accounted for the same, though requested. And the said James Shapley died on the ninth day of July, A. D. 1837, and on the ninth day of August, A. D. 1837, J. Hamilton Shapley was appointed administrator upon his goods and estate.

The prayer of the bill was, that the said defendants may answer the premises, and that an account may be taken of all the dealings and transactions hereinbefore mentioned between the said Charles W. Cutter on his own account and behalf, and as executor of the last will and testament of the said Clement Storer,—and the said J. Hamilton Shapley, as administrator of the goods and estate of the said James Shapley, and the said plaintiff,—and between them and each of them in said capacities; and that the said defendants may be decreed to pay the plaintiff, as one of the assignees mentioned in the said indenture, what may be found due him on taking such accounts from the said Jacob Cutter. And that the said Robert Rice may be ordered to convey the said securities and mortgage conveyed to him, as aforesaid, to your said plaintiff, or to the said Shapley, the said Cutter and the said plaintiff, or to pay to the said plaintiff the amount thereof. And that the said James Smith, junior, may be decreed to release and to convey to the said plaintiff, or to the said plaintiff and the said Shapley and Cutter, as assignees as aforesaid, the equity of redemption in the premises aforesaid, being the same sold by the said Larkin as aforesaid, or to convey and release to the said Shapley and the said plaintiff, two-third parts thereof, and to hold the same subject to redemption, upon payment of the said debt, assigned to him by the said Granite Bank, and to pay to the said plaintiff, or to the said Shapley, Cutter and the said plaintiff, as assignees aforesaid, the amount due upon the notes and securities made by him to the said Charles W. Cutter, as aforesaid. Or that the said court will decree and order, that all the said property held by the said Charles W. Cutter, as one of the assignees, mentioned in the said indenture, and as executor of the said Storer, and by the said Shapley, Rice and Smith, may be conveyed and delivered to some person, who may be appointed by the said court as a receiver, to have the care, custody and management thereof, to dispose thereof, and also to receive all sums due from any of the persons aforesaid, on account of the said assignment; and under the direction of the said court, to apply the same property and sums to the indemnity and payment of your said plaintiff, for his said claims and liabilities, and to the execution of the other trusts mentioned in the said indenture. And that the plaintiff may have such further and other relief in the premises, as the nature and circumstances of this case may require, and to your honors may seem meet.

A supplemental bill was afterwards filed, setting forth, in substance, that on the 17th of September, A. D. 1839, the said James Smith, Jr., executed a deed, conveying the said Folsom farm to James Smith, Sen., for the consideration of $5,000. That on the thirteenth day of July, A. D., 1836, when the said James Smith, Jr., paid the aforesaid debt to the said Granite Bank, he procured to be made to him from the president, directors and company of the said Granite Bank, an endorsement of the said note held

by the said bank, and a deed purporting to convey the said mortgage of the said farm held by the said bank. That the said Robert Rice on the —— day of —— A. D. 1838, commenced an action, as assignee of the mortgage aforesaid, made by the said James Smith, Jr., to Charles W. Cutter, to obtain possession of the said mortgaged premises, which action was entered at the court of common pleas at Exeter, in and for the said county of Rockingham, in the state of New Hampshire, on the first Tuesday of September, A. D. 1838, and continued from term to term to the September term of the said court, A. D. 1844, when the same was tried, and the said James Smith, Jr., upon the said trial, alleged and relied, as a defence to the said action, upon the fact, that the said Charles W. Cutter, though, when he made the said conveyance of the said equity of redemption, he claimed and represented himself to be the owner thereof, had no interest therein except what he acquired by virtue of the said sale from the said Larkin, deputy sheriff, as aforesaid. And that the said James Smith, senior, claims to be the assignee and owner of the aforesaid mortgage, and mortgage debt, from Arthur Folsom to Nathaniel Gilman, and that on the 15th day of October, A. D. 1841, he gave public notice, that on the 16th day of April, A. D. 1841 he took possession of the said farm, as assignee of the said mortgage, for conditions broken, and held the same for the purpose of foreclosing the said mortgage, by publishing the said notice in a newspaper, printed in the said county as the law directs. And that the said James Smith, senior, at the time of the said pretended conveyances of the said real estate and mortgage was far advanced in years,—was not possessed of any property, or of none beyond a very small amount, and that he, in fact, never paid any valuable consideration for the said pretended conveyance of the said farm, and of the said mortgage, and that the said conveyances were merely to enable him to hold the said property, and mortgage, in trust for the said James Smith, Jr., and for his benefit; and that the said James Smith, senior, is not a purchaser thereof in good faith and for a valuable consideration, but that the said conveyances were made by the said James Smith, Jr., without consideration, and for the purpose of delaying and defeating his creditors, and others, who have just claims upon said property; and that the said pretended conveyances of the said property are, and should be held and taken to be, void, and of no effect. And that the said James Smith, Jr., though he well knew, and alleged, and admitted, that he had no title to the said equity of redemption, by virtue of his said deed from Charles W. Cutter, is now seeking and attempting in the name and through the agency of the said James Smith, senior, to foreclose the said last mentioned mortgage, and to obtain a complete and inde-

feasible title to the said farm, during the pendency of the said plaintiff's original bill, and before a decree can be had therein. That the said James Smith, Jr., pretends, that he has an absolute title to the said Folsom farm, by foreclosure of the said mortgage assigned to him by the said Granite Bank. Whereas your plaintiff charges the contrary thereof to be true, and that the said mortgage was discharged by the said Smith, Jr., to the said bank, or has since been paid to the said Smith, and satisfied by the rents and income of the said farm by him received. And the said Charles W. Cutter pretends that he alone was the purchaser of the said equity of redemption from Samuel Larkin, deputy sheriff; whereas your plaintiff charges the truth to be, that the same was struck off to and purchased by the said James Shapley, in the names and in behalf of the said Cushing, Cutter and James Shapley, surviving assignees of Jacob Cutter as aforesaid, at and for the price of $2500. And the said James Smith, Jr., sometimes pretends, that he had no notice of the said last mentioned purchase by the said assignees, whereas your plaintiff charges it to be true, that the return of the said sale, upon the said execution, by the said Larkin, was duly made and recorded, and that the sale aforesaid was made upon due and legal notice, and was open and notorious. That the said James Smith, Jr., sometimes pretends, that he purchased an absolute title to the said Folsom farm, from the Granite Bank, at Exeter. But your plaintiff charges, that the said Smith, Jr., only paid and discharged the said Folsom mortgage, held by the said Granite Bank, and that James Smith, Jr., gave Charles W. Cutter a mortgage of the said farm, to secure the price of the right in equity of redemption aforesaid. And sometimes the said Charles W. Cutter and the said Rice pretend, that the securities given by the said Smith, Jr., were endorsed and delivered to the said Rice, before they became due, and without notice of the consideration for which the same were given, and the said Rice pretends to hold the same as his absolute property, or as administrator, and has suits at law pending to recover the same, or to foreclose the said mortgage from James Smith, Jr., to Charles W. Cutter. Whereas, your said plaintiff charges, that the said securities were endorsed and delivered to the said Rice, after the same or a part of them became due, and that the mortgage deed, accompanying the said securities, was not assigned to the said Rice until the tenth day of November, A. D. 1837. And the said Rice, well knowing or having reason to believe, that the said securities were a part of the property held in trust by virtue of the said indenture, was therefore bound, in point of law, to hold the same subject to said trusts.

Charles W. Cutter in his answer, states, that at the time of the execution of the judgment set forth in the bill, the said Arthur

Folsom was indebted to the said Jacob Cutter in about the sum of eleven thousand dollars, and that this defendant procured the demand to be put in suit, and the said farm to be attached on the original writ, returnable at the superior court, at the September term thereof; and at the August term thereof, judgment was rendered in said action in favor of the said Jacob for the sum of $46.50 damages, and $10 costs; and on the 24th day of August, A. D. 1834, execution was sued out, and soon afterward delivered to the said Larkin, the deputy sheriff, with instructions to levy the same on the said farm, by selling the said Folsom's right to redeem the same at public auction. That he instructed the said Larkin, in case no person should appear, and offer for the said equity of redemption more than $2500, that the said Larkin might hire the purchaser thereof at that price; that he was unable to attend the said sale, but was informed by the said Larkin afterwards, that it was so sold, and that he, this defendant, was the purchaser, and that he, this defendant, paid the said Larkin his fees in the said levy and sale. But this defendant cannot state from his present recollection, that the said Larkin made a deed to him of the said premises; but he has no doubt of the fact, because he finds at the registry of deeds for the county of Rockingham, that a deed has been recorded, which he has no doubt was the deed executed by the said Larkin to this defendant.

And this defendant further saith, that he has been informed, that the return of the said officer upon the said execution sets forth, that the said right in equity was bid off to the said Cushing, Shapley, and this defendant; but this defendant avers, that he never saw the said return, and never heard, that any other person pretended to be the purchaser of the said premises but himself; and he avers, and is ready to prove, that he alone took possession of the said premises, and contracted with a person to occupy and cultivate the same, and purchased cattle and farming utensils, and made contracts of sale hereafter mentioned, and took the notes therefor, and neither the said Cushing nor the said Shapley ever interfered, or claimed a right to interfere, in the said transactions. And he further states, that on the 7th day of July, A. D. 1835, he sold the said Folsom's equity of redemption in the premises to Samuel Smith, of Bangor, in the state of Maine, and that the price, agreed to be paid by the said Samuel for the said equity of redemption, was $2500, for which sum the said Smith gave to this defendant his notes of hand, payable in six, twelve, and eighteen months from date, signed by the said Samuel and by one James Smith, Jr.; and this defendant thereupon made a deed of his interest in the said premises to the said Samuel Smith, which deed is duly recorded in the registry of deeds for the said

county of Rockingham. That the said farm had been mortgaged by the said Arthur Folsom to one Nathaniel Gilman, and at the time of the said levy, the Granite Bank, at Exeter, was assignee of the said mortgage, and that the sum due on the said mortgage was about $2900, at the time of the said sale to the said Smith: that the said Samuel Smith stated to this defendant at the time, that he had purchased the said premises for the use of the said James Smith, Jr., to whom he has since conveyed the same; that sometime in the summer of 1835, the said assignee of the said mortgaged premises, took possession thereof for breach of condition, in pursuance of an agreement between the said assignee and this defendant, made before the said conveyance, and the said Smith, by advice of this defendant, took an assignment and conveyance from the said assignee, and the equity of redemption having long since expired, the said Smith has acquired a complete title to the premises. That the said James Smith, Jr., on the 2d day of December, A. D. 1836, made to this defendant a deed, conveying the said premises to him, to secure the payment of the draft in the said complainant's bill mentioned, and also of two notes of hand, each for the sum of $833.33, in the said bill mentioned, and that the said draft was given in payment for another of the same tenor, which had not been paid, and that the consideration of all of them was the sale of said equity of redemption; the said draft having been negotiated by this defendant, before it became due, to Calvin Spaulding and Edward Howe, the present holders thereof. That on the 6th day of December, A. D. 1836, being about to go to distant parts of the country, and being largely indebted to John T. Goddard, Esq., since deceased, he transferred and delivered to the said John T. Goddard, the said two notes of hand, and the mortgage deed securing the payment thereof, as collateral security; and that afterwards the said John T. Goddard deceased, and the said Robert Rice, was appointed administrator of the said estate, and afterwards, but when, he cannot from his recollection now state, at the request of the said Rice's attorney, he wrote out or executed a formal transfer of the said deed and mortgaged premises on the back of the said deed. That the said Goddard, and the said Spaulding and Howe, knew nothing of the consideration, upon which the said notes were founded, at the time the same were transferred, to the best of his knowledge and ability, but this defendant avers, that having paid out on account of his own liabilities for the said Jacob, and having compounded debts, owed by the said Jacob to the persons in the said assignment mentioned, and paid therefor a much larger sum than the amount received by him as assignee as aforesaid, he assumed the notes by him received for the sale of the said

equity of redemption, as his own property, and dealt with them accordingly. That the said E. & S. Smith and James Smith, Jr., utterly refuse to pay the amount of the draft and notes aforesaid, or any part thereof, on the ground, that no title has passed to them, or either of them, by virtue of the said sale, and that the said draft and notes are now in suit, in the names of the holders thereof.

Robert Rice, in his answer, states that John T. Goddard, late of Portsmouth, aforesaid, merchant, deceased on or about the month of July, A. D. 1837, and that this defendant, on or about the month of August, following, was duly appointed administrator of the said John T. Goddard; that soon afterwards, this defendant discovered among the papers of the said John T. Goddard, two notes, in the following words and figures, to wit:

"Portsmouth, July 7, 1835. For value received, we jointly and severally promise to pay Charles W. Cutter, or his order, eight hundred and thirty-three dollars and thirty-three cents, in eighteen months from date, with interest annually. James Smith, Jr. E. & S. Smith." Indorsed: "Charles W. Cutter."

"Portsmouth, July 7, 1835. For value received, we jointly and severally promise to pay Charles W. Cutter, or his order, eight hundred and thirty-three dollars and thirty-three cents, in twelve months, with interest. James Smith, Jr. E. & S. Smith." Indorsed: "Charles W. Cutter."

Which said notes this defendant was informed, by the said Goddard, in his life time, and some time in April, 1837, but at what time in the said April, he is now unable to state, were assigned, by the said Charles W. Cutter, together with the mortgage given by the said James Smith, Jr., to secure the same to the said Goddard. This defendant believes, that the said notes were so assigned in the year 1836, but at what time in the said year he does not know. That in the autumn of 1837, being about to institute a suit to foreclose the mortgage, given to secure the said notes, he applied to the said Charles W. Cutter, by his attorney, William H. Y. Hackett, to write out a formal transfer of the said mortgage to this defendant, in his capacity as administrator of the said Goddard, he being advised that that course was proper; the said notes having been assigned to the said Goddard, in his life time. That the said Charles W. Cutter, was largely indebted to the said John T. Goddard, at the time of his death, but whether the said notes were assigned to the said Goddard, by the said Cutter, as collateral security, or in part payment of the said debt, this defendant is not informed, but he has no doubt that the assignment was for one of the said last mentioned purposes, and not in trust. That the said notes were not assigned to him long after they became due and payable, but on the contrary, that they were assigned to the said Goddard in his life time, and, as this defendant verily believes, some time in the year 1836, but at no time were the said notes transferred to this defendant. That before the filing of the complainant's bill, as aforesaid, he had no intimation from the said Charles W. Cutter, or from any person, or from rumor, that the said Charles W. Cutter held the said right in the said equity of redemption, not as his absolute property and estate, but only upon trust, or that the same was subject to any other claim; nor did he know, nor was he informed, nor did he suspect, that the said notes were given to the said Charles W. Cutter for the said equity of redemption, or what the consideration of said notes, or either of them, was.

James Smith, Jr., in his answer states, that on or about the fifth day of July, A. D. 1835, in a conversation concerning the Folsom farm, between the said Charles W. Cutter and this defendant, the said Cutter affirmed that he owned all the right in equity which the said Arthur Folsom had of redeeming the said farm or tract of land, and proposed to sell and convey the same to this defendant, and as an inducement for this defendant to purchase the same, he stated, that there was money enough arising out of a certain contract made by one Samuel Smith and the said C. W. Cutter and this defendant, and due to this defendant, for him, (this defendant,) to purchase the said equity of redemption; and the said Charles affirming, that he had a perfect title to the same, this defendant agreed to become the purchaser thereof; and the said Charles then made a deed thereof to this defendant, but which was not fully executed; and afterwards, at Boston, on the 7th day of July, A. D. 1835, it was mutually agreed, that the said Charles should sell and convey the said equity of redemption to the said Samuel Smith, he then being present with the said Charles and this defendant, for the benefit of the said defendant, for the sum of $2500, which was accordingly done, by a deed executed on the same day, conveying all the right in equity, which the said Arthur Folsom had on the 20th day of October, A. D. 1834, of redeeming the said Folsom farm; and to pay or secure the said sum of $2500, the said Samuel made and delivered, to the said Charles, three certain promissory notes, each bearing date July 7th, 1835, each for the sum of $833.33, each signed by James Smith, Jr., this defendant, and E. & S. Smith, which the said Charles then and there received and accepted in full satisfaction. And afterwards, in pursuance of said agreement and understanding made at said city of Boston, between the parties aforesaid, the said Samuel Smith, by his deed, bearing date the sixteenth day of May, A. D. 1836, in consideration of $2500, quit-claimed unto this defendant, all his right, title and interest in and to the said Folsom farm. That Arthur

Folsom on the 1st of October, 1825, mortgaged the said Folsom farm to Nathaniel Gilman, for the sum of $7500, which said mortgage was on the 2d of April, 1832, assigned to the president, directors and company of the Granite Bank,—and afterwards, on July 13th, 1836, was assigned to this defendant in consideration of his agreement to pay over to the said bank the balance still due on the notes which were secured by the said mortgage, being the sum of $2988.97.

And this defendant understands and believes, that previous to the assignment to him, to wit, on the 28th day of September, 1835, the said president, directors and company of the said Granite Bank, the condition of the said deed of mortgage having long previous to the said 28th day of September, 1835, been broken, entered peaceably into the said mortgaged premises, and took possession of the same, for condition broken, for the purpose of foreclosing the said mortgage, and therefore gave due public notice, according to the requirement of the statute, in such case made and provided, and so continued in possession of the premises, without any hinderance or interruption, until the defendant became actually seized and possessed thereof; and this defendant, from the time last aforesaid, without any hinderance or interruption, continued in the possession thereof until the 17th day of September, A. D. 1839, during all which long space of time, neither the said Arthur Folsom, nor his assigns, nor any other person or persons, have ever paid, or offered to pay, either to the said Granite Bank, or to this defendant, the aforesaid sum of $2988.47. That on the 17th day of December, 1839, he conveyed all his right, title and interest in the Folsom farm, to James Smith, Sen., for a good and valuable consideration, and that the said Smith has thenceforward been in the actual possession thereof. That he has no knowledge whether the said Arthur Folsom was indebted to said Jacob Cutter, or in respect to the recovery of judgment and the levy of the execution mentioned, except from rumor and report, but he did understand, and was informed by the said Charles W. Cutter, that on the sale of the said equity of redemption by the said Larkin, deputy sheriff, he, the said Charles, was the sole purchaser thereof, and by that sale acquired a perfect title to the same in his own right, and not as assignee, for the purpose of holding the same upon the trusts mentioned in the said indenture. And this defendant, long since the date of the said deed of Charles to said Samuel Smith, has been informed that the said Larkin, on the 20th day of October, 1834, sold and conveyed all the right, which the said Arthur had of redeeming said premises, to James Shapley, the said Charles Cushing and said Charles W. Cutter, and it so appears by the said Larkin's return of said execution in favor of said Jacob Cutter;

but whether said Larkin ever executed deeds of the premises to the said Shapley or Cushing, this defendant has no certain knowledge or information, and is yet, after diligent inquiry, unable to ascertain the truth in respect of the same. That the three promissory notes received as the consideration of the conveyance from the said Cutter to the said Samuel Smith, were payable as follows: one of said notes was payable in six months from its date, one other in twelve months from its date, and the third in eighteen months from the date; that this defendant is informed, as well by the said Charles as by the said Samuel Smith, that the said note payable in six months from its date, has been duly paid, and discharged; the said last note having been, from its date until payment, in the possession of said Samuel, and afterwards the said Charles instituted a suit, as the said Charles stated to him, on the said other two notes against this defendant alone, and a certain draft on said E. & S. Smith, given for the said last mentioned note for six months, and for security, attached the said Folsom farm, and the said suit was entered in the court of common pleas, September term, 1836, and continued, and was pending in the said court of common pleas, in and for the said county of Rockingham, on the 2nd day of December, A. D. 1836, and long afterwards; on or before the said 2nd day of December last aforesaid, the said Charles agreed, that if this defendant would secure the payment of the said two notes, and also a certain draft of this defendant on said E. & S. Smith, dated April 18, 1836, payable to the order of the said Charles at the Suffolk Bank, in Boston, for the sum of $883, which the said E. & S. Smith, on the 20th day of June, 1836, had accepted, to pay, that he, the said Cutter would discontinue the suit; and this defendant agreeing thereto, did, on or about the 2nd day of December, 1836, execute to said Charles a deed of mortgage of the said Folsom farm for the purpose aforesaid, the said deed to be void upon payment of said notes and a certain draft; but the said suit was not so discontinued until the September term of the court of common pleas, in which said court the said suit had long been pending.

And the said Robert Rice, administrator upon the goods and estate of the said John T. Goddard, on the 21st day of July, A. D. 1838, instituted a suit upon the said mortgage against this defendant, which was entered in the court of common pleas, in and for said county of Rockingham, September term, 1838, which said suit is still pending, and the said Robert claims, that the said deed of mortgage, and the said notes, were duly assigned by the said Charles to the said John T. Goddard, in his life-time, for a valuable consideration; and another suit in the name of Edward Howe and Calvin Spalding, on or about the 18th day of Sep-

tember, A. D. 1839, was commenced against this defendant, founded upon the said draft, which suit is now pending in this circuit court of the United States, and the said Charles pretends, that he sold and duly negotiated the said draft, now amounting to about the sum of $883, and interest thereon, to the said Howe and Spalding. And this defendant says, that the said Charles W. Cutter stated to him, that when he assigned the said two notes to the said Goddard, the time specified for the payment of one of them had elapsed, and this defendant has reasons to believe, that the said mortgage was not duly and legally assigned to said Rice, or said Goddard, until after the decease of said Goddard; that on or about the said 2nd day of December, 1836, or soon afterwards, the said Goddard, acting as the agent of the said Charles, and long before the pretended assignment of said mortgage and notes to him (the said Goddard,) received full knowledge of the consideration, for which the said two notes were given, and that this defendant ought not to be precluded from making a legal defence against said notes, or from making any equitable and just set-off against the said notes of the claims he had against the said Charles, by reason of the negotiation or transfer as aforesaid, or of the assignment of said mortgage; and this defendant insists and claims, that there was equitably and justly due to him from said Charles, anterior to the pretended assignment of said mortgage and notes to said Goddard, or said Rice, as administrator of said Goddard, the sum of about $1300, being about one-half the sum paid by the said Samuel Smith to the said Charles, in consequence of a certain agreement or contract, made on or about the 5th day of February, 1835, by and between the said Samuel on the one part, and the said Charles and this defendant on the other part, by which the said Samuel agreed to pay the said Charles and this defendant, one-half, or a certain portion of the profits, which the said Samuel might receive in the sale of certain lands in the state of Maine, in consequence of the aid and assistance of the said Charles and this defendant, rendered in the sale of such lands. And this defendant alleges, that the said Samuel, in pursuance of the said agreement or contract, paid into the hands of the said Cutter, the sum of about twenty-six hundred dollars, for the aid and assistance so rendered the said Samuel by the said Charles and this defendant; one-half of which said sum the said Cutter, although thereto requested, has neglected to pay to this defendant, or allow in part satisfaction or payment of said two notes. And this defendant now prays this honorable court to exercise its equitable jurisdiction for his protection and relief in the premises; and that the said notes and the said mortgage, so transferred and assigned by the said Cutter to the said Goddard, or his administrator, may be set aside or cancelled,

or else that the said Cutter may be ordered to apply the said sum of about thirteen hundred dollars towards the payment thereof.

James Smith (Sen.) having died pending the proceedings, a bill of revivor was filed, and the suit revived against his heirs. The plaintiff, Charles Cushing, having afterwards become bankrupt, a bill was filed, making his assignee a party to the suit. The assignee appeared, and disclaimed all interest in the premises, admitting, that the title thereto had been sold by him, by authority of the court of bankruptcy, and that the same was now revested in the bankrupt.

Some cross-bills were filed by some of the parties, but they were afterwards dismissed. A separate answer was also made by each, and several interlocutory orders were made, and much testimony taken which it is not deemed necessary to set forth, as all the material facts sufficiently appear in the foregoing abstracts of the bill and answers, and in the opinion of the court. The following letter also appeared in the case, which was published in the New Hampshire Gazette, of October, 1840: "Sir: You are respectfully called on by the subscriber to furnish him with the following documents, namely: a certain deed from one Samuel Larkin, of Portsmouth, Esq., deputy sheriff, to Charles W. Cutter; the said deed is dated October 20th, A. D. 1834, which deed purports to convey all the right and equity, that one Arthur Folsom had at that time to redeem the Folsom farm, commonly so called. The said farm is situate in Newington, in the county of Rockingham, and the aforementioned deed is witnessed by two of the daughters of Larkin, aforesaid, and acknowledged by him before Mr. Hackett, a justice of the peace, as appears by a certified copy, from the register of deeds for the county of Rockingham. The said copy is now and has been for a long time filed in the United States court, of which you, sir, are sole clerk; which copy purporting to be a true deed, has been shown both to yourself and the said Larkin; you read and examined it with astonishment, and Mr. Larkin, after a thorough examination of the copy, denied having ever executed such a deed to Charles W. Cutter, and referred the subscriber to the execution, Jacob Cutter vs. Arthur Folsom, and the said Larkin's sworn return thereon,* and also the said Larkin's deposition taken by Daniel P. Drown, Esq., on the same subject, both of which are now filed in the office of which you are clerk; which copy of execution is certified to be a true copy of record, by Mr. Hoit, clerk of the court from whence the said execution is issued; which return so made by Officer Larkin, aforesaid, and sworn to by him, conveyed all the right and title that Arthur Folsom had to the premises aforesaid, to James Shapley, Esq., late of Portsmouth, now deceased, Charles Cushing of Boston, merchant, and Charles W. Cutter, aforesaid, Esq., in consideration of the sum of $2,500, paid by

the grantees of Samuel Larkin, aforesaid, who made, executed, and delivered to them the aforesaid deed; and you are further invited to furnish the subscriber one other document now in your hands and possession, namely, a confidential letter or contract from Samuel Smith, of Bangor, merchant, addressed to Charles W. Cutter, and James Smith, Jr. A sworn copy by Samuel Smith of the said contract is now filed in the court, of which you are clerk, and his deposition, also there filed, states that the said Samuel Smith paid you, Charles W. Cutter, in accordance with that contract, about $2,600, one half of which, namely, $1,300, ought to have been applied in part payment of the notes and drafts on you and S. Smith, which I gave you for your right in the Folsom farm aforesaid, which now amount to about $2,900, and which are by you all sold and transferred to people in and out of this state, and are in suit against me in several actions now pending both in the state and United States courts; and there is also a bill of equity by Mr. C. Cushing, against the subscriber, demanding immediate possession of this very farm, for which I gave you my notes and draft aforementioned. Now, sir, the deed, if there be such an one, Samuel Larkin to C. W. Cutter, dated October 20th, A. D. 1834, and the confidential letter or contract from Samuel Smith to C. W. Cutter, and James Smith, Jr., dated February 5, A. D. 1835, now locked up by you, Mr. Cutter, are absolutely necessary to the subscriber, to enable him to make a defence against these expensive and ruinous actions so frequently referred to. And, sir, the subscriber is compelled to call on you in this public manner, partially in consequence of your refusing to appear before the several justices before whom the subscriber summoned you for the purpose of obtaining your testimony in relation to the document before referred to, and partially as a matter of prudence not again to call on Mr. Cutter, after the vile threats made use of by you to me in your office; and you are further requested to state, whether you did agree with the subscriber, provided the subscriber would give Mr. Cutter a mortgage deed of the farm aforesaid, to secure the aforesaid notes and drafts; which mortgage is dated December 2nd, 1836; that you, Mr. Cutter, then and there, at once, would discharge the said Cutter's action vs. the subscriber, founded on the notes and draft already named, which action was then pending in the court of common pleas in this state; and after you got the possession of the deed aforesaid, did you not refuse to discharge the said action? And did you not make and file an affidavit in the said court, in which you stated, that the aforesaid action was by me, the subscriber, agreed to be defaulted instead of being discharged? Be also good enough, Mr. Cutter, to inform the subscriber, whether or not you were the bona fide owner of the notes and the draft, at the time you took the mortgage deed aforesaid to secure to yourself the aforementioned notes and draft? Or have you ever sworn, before any court of justice, that you transferred the notes or draft aforesaid, before you took the mortgage deed aforesaid, to secure the aforementioned notes and draft to yourself? Or have you transferred the said mortgage deed to Robert Rice? And is not the subscriber by the said Rice, now sued on the mortgage, and the action now pending in the state court? And is not the draft now also in suit in the United States court, brought by people down in the state of Maine, secured by this very mortgage sold by you to Rice? And has not Mr. Cushing a suit pending with the subscriber, in the United States court, for the above notes? You well know, sir, that I have paid the president, directors and company, of the Granite Bank at Exeter, the sum of $3,000, for their title to the Folsom farm; and you, sir, must be well aware, that you have received $2,600, of Mr. Samuel Smith, in accordance with the confidential letter before referred to, now in your possession, and held by you with an iron hand, one half of which sum ought to have been endorsed on the notes I gave you, Charles W. Cutter, for your pretended title to the Folsom farm, for that is all you ever had; if otherwise, show it, if you are able, and not let an innocent purchaser lose both his farm and money, and saddle him with the payment of all these notes and draft, (all which are without consideration,) through your misconduct. James Smith, Jr. P. S. Will Mr. Cutter be good enough to state the reason why he refused to go to Bangor, after agreeing with the subscriber to go with him and have the business with Mr. Samuel Smith settled? And did not Samuel Smith offer you, if you and the subscriber would visit Bangor, to pay us the balance on the contract, in property to be appraised by any good men, by your giving up the contract and our joint discharge to him? Now, it is hoped by the subscriber, that Mr. Cutter will settle this business, before he again visits Georgia or the West Indies, and not dodge the courts. J. S. Jr."

The case was argued by James Bell for plaintiff; by Hackett, for defendant Robert Rice; and by Claggett and Woodbury, for Smith, Jr., and the heirs of Smith, senior.

STORY, Circuit Justice. This case is extremely complicated in its actual presentation, and has been rendered much more so by some of the irregularities and imperfections, which have occurred in its progress. The history of the principal transactions may be thus summarily stated. On the 13th of April, 1829, Jacob Cutter, by indenture, conveyed and assigned to Clement Storer, James Shapley, and Charles W. Cutter, all his property in trust for the payment of his debts, due to his creditors, stated in an accompanying schedule. At the time when the in-

denture was executed, a large debt was due from Messrs. Folsom and McCulloh of Hayti, to Jacob Cutter, and was among the assigned property. The trustees brought an action to recover the amount from the debtors, in September, 1829, and recovered judgment against Folsom for $4650, and costs; and the sheriff, on that execution, in October, 1834, levied and sold the equity of redemption of Folsom in a certain tract of land in Newington in New Hampshire (the same being then subject to a mortgage to Nathaniel Gilman, made in October, 1825; and afterwards conveyed to and held by the Granite Bank—a bank incorporated in New Hampshire), for the sum of $2500. One of the allegations in the bill is that the purchase was made and the property bought in by the assignee of Jacob Cutter, for the benefit of the creditors; and that a deed thereof was made by the sheriff to Shapley, Cushing, and Charles W. Cutter, for and on account of the creditors. In point of fact, no original deed from the sheriff can now be found; and, as we shall presently see, Charles W. Cutter insists, that the deed was made to him alone, and that he purchased the premises upon his own account. On the 7th of July, 1835, Charles W. Cutter sold and conveyed the equity of redemption so purchased to Samuel Smith (senior), in fee, and Smith, on the 16th of May, 1836, sold and conveyed the same to his son James Smith, Jr., (the defendant), in fee, for the sum of $2500. On the 2nd of December, 1836, James Smith, Jr., executed a deed of mortgage to Charles W. Cutter, to secure to him the purchase money under the original purchase, made from Cutter, for which certain notes were given by Smith, senior. On the 9th of January, 1838, Charles W. Cutter conveyed the said mortgage to Robert Rice, administrator (the defendant) with two of the notes which then were unpaid by Smith, junior, on account of a debt due by the said Charles W. Cutter to one Goddard, of whom Rice was administrator. The Granite Bank, having become the owners of the mortgage, made by Folsom to Gilman in July, 1835, afterwards, on the 13th of July, 1836, conveyed the same to James Smith, Jr., for the sum then due on the mortgage, viz. $2988.47. Smith, Jr., in his answer, asserts, that before the conveyance by the Granite Bank to him, to wit, on the 28th of September, 1835, the Granite Bank entered into forcible possession of the premises for condition broken, and held peaceable possession thereof, for the purpose of foreclosing the mortgage, until the conveyance thereof to him, Smith, who then entered and held possession thereof until the 17th of September, 1839, and that the mortgage has never been redeemed by Folsom, or any other person.

The present bill was brought by the plaintiff, who is one of the creditors of Jacob Cutter, and one of the assignees named in the deed of assignment of Jacob Cutter, to obtain an account and settlement from the other assignees of the trust property; and mainly to have the Folsom farm brought into and accounted for as a part of the assets under the assignment. The accounts as between the assignees and the plaintiff were referred to a master, who made a report satisfactory to the parties; and nothing now remains for consideration, except what relates to the Folsom farm. Now, under these circumstances, the remaining and main subject of the bill is to enable the assignees of Jacob Cutter, as against Smith, Jr., and the heirs of Smith, senior, to obtain a decree, for the redemption of the Folsom farm, under the title, which they insist that they acquired under the sheriff's sale and conveyance by him to Shapley, Cushing and Cutter for the assignees; and as against Rice, to obtain a surrender of the mortgage and notes, held by him under the conveyance by Charles W. Cutter to him. Smith, Jr., insists upon various grounds of defence, the most prominent of which are; First, that he is a bona fide purchaser of the premises, without knowledge, or notice of any equity of the assignees. Secondly, that his title to the premises has been completely established by the foreclosure of the Gilman mortgage by the acts of the Granite Bank, and his own possession under the bank, according to the requirements of the statutes of New Hampshire. Rice insists upon various grounds of defence, and among others, upon the two grounds above insisted on by Smith, Jr. If either of these grounds is maintainable, it will not be necessary to proceed farther in the examination of the other points made in the case. If they are not supported, then the court must proceed to examine the validity of the other points.

In respect to the first point, the case is not without its difficulties from the loose and inartificial manner, in which the pleadings are drawn, and the incompleteness and unsatisfactory statements in the evidence taken in the cause. This has most probably arisen from bills in equity being of rare occurrence in this district, and, therefore, the parties have not derived the full benefit of the skill and experience of the bar, in the arrangement and management of the proceedings. It appears to me, that the present defendant, James Smith, Jr. must be now treated as the sole purchaser in the case, his father being but a mere nominal party, and having, in truth, no substantial interest in the premises. I shall, therefore, drop all consideration of the supposed claim of the father, and deal solely with that of the son. The latter is beyond all question a bona fide purchaser of the mortgage held by the Granite Bank in the premises. So far his title seems unexceptionable. In respect to his purchase of the equity of redemption, under the sheriff's sale, the case stands thus. The sheriff sold the equity of redemption, and in his return on the execution dated the 20th

of October, 1834, he states that the highest bidder and purchasers were James Shapley, (since deceased,) Charles Cushing (the plaintiff,) and Charles W. Cutter (the defendant,) three of the assignees under the indenture already referred to, for the sum of 2500 dollars, and that he made a deed to them accordingly. Now, no such deed is produced in the case; there is a copy of a deed, taken from the registry of deeds of Rockingham county, where the lands lie, which was recorded therein on the 17th of November, 1834, which deed purports to be dated on the 20th of October, 1834, and to be a conveyance to Charles W. Cutter (the defendant) alone as the purchaser at the sale. No original deed to Charles W. Cutter from the sheriff is produced either by Charles W. Cutter, or by the other assignees; nor is the absence of the original deed in any manner whatsoever accounted for. I say in any manner whatsoever; for neither Charles W. Cutter, nor either of the other assignees, pretends to account for the same. The witnesses to the deed, and the magistrate, who took the acknowledgment, do not pretend to state, from their own present knowledge or remembrance. to whom the original deed was made, whether to Charles W. Cutter, or to him and Shapley, and Cushing. The sheriff asserts little more than his belief, that the facts were as stated in his return; and his testimony is otherwise as vague and inconclusive as can well be imagined; and he does not seem to have any definite recollections on the subject. He presumes, but he does not know, that he carried the original levy of the execution to be recorded. No other deed under the levy appears to have been recorded in the registry than that to Charles W. Cutter. There is also a memorandum in the case, copied from a memorandum book of the late Samuel Shapley, which is introduced as evidence in the case, which purports to have been made by him on the 20th of October, 1834, and to state, that he was present at the sale, and that the premises were bid off by him as the highest bidder for $2500; and that he directed the sheriff "to place the bid to Charles Cushing, C. W. Cutter and himself, Shapley, assignees of Jacob Cutter." But if Shapley were now living, he would not be permitted to give testimony of the facts, so stated, since he is a party in the trust; and therefore this memorandum cannot. in any possible view, be evidence. The same suggestion applies to a letter, addressed by Charles Cushing to Shapley on the same day. It is not competent evidence in the cause to support his interest. On the other hand, Charles W. Cutter utterly denies that the purchase was made on account of the assignees, or of any body but himself; but he gives no account whatsoever of the original deed of the sheriff, or what has become of it.

Now, it is under these obscure, and indeterminate, and doubtful circumstances, that the court is called upon to decide this important question, by whom, and on whose account the purchase at the sheriff's sale was made,—whether by the three assignees, or by Charles W. Cutter alone. If the return on the execution is to be trusted, the purchase was made by Shapley, Cushing, and Cutter, not as assignees, for it is no where suggested in that return, that they were the purchasers, as assignees, but simply, that they were personally the purchasers. On the other hand, the recorded deed shows, that the sale was to Charles W. Cutter alone; and the said Cutter, (as has been already suggested), insists that the purchase was upon his own sole account. In this state of the case, the onus probandi is on the plaintiff to overcome the denials of Cutter's answer by the testimony of two witnesses, or of one witness and of other decisive corroborative facts. The most, that can be said, is, that the whole transaction is involved in great mystery, as much on the part of Cutter, as of the other assignees, and that a cloud rests upon it, which it is equally difficult to disperse, or to penetrate. It may be, that as between Cutter and the other assignees, the case ought to be treated as one, in which the deed was made to him alone, for the benefit of all the assignees, as such. But that he denies, and neither the deed to him, nor the sheriff's return, states, that the sale was for or on their account, as assignees; and the deed alludes to no purchaser, but Cutter. And it is quite consistent with the other presumptions in the case (I do not say the facts), that the assignees, even if the purchase was originally made on their account, finally acquiesced in Cutter's taking it to himself. How are we otherwise to account for their total silence and acquiescence in Cutter's assuming the whole control of the property, without objection, and above all, never interfering to redeem the equity, notwithstanding the notoriety of the publication in the newspapers, that it was in the course of a foreclosure? The truth is, that there has been apparently gross laches on the part of the assignees, in relation to the whole matter; the sale of the equity; the giving of the deed by the sheriff; and the subsequent entire non-resistance of the adverse claims of the Granite Bank and Smith, Jr., (the defendant). And I do exceedingly doubt, whether, under the existing evidence, there is enough to show, that Cutter can now be treated by the other assignees, as a trustee for them, upon a bill filed by them, whatever might be the fact as to the rights of the other creditors, included in the indenture of assignment. But supposing Cutter to have been a trustee for the assignees of the equity of redemption, under the sheriff's sale. that will advance the case of the plaintiff but a little way, unless it can be shown, that Smith. Jr., at the time of his purchase from Cutter, had full knowledge,

or was put upon full inquiry, as to Cutter's being a trustee for the assignees as such. Smith, Jr., utterly denies having nad any such knowledge, until long after his purchase from Cutter; and, indeed, (as it should seem), until shortly before the suit was brought. Nor was Smith, Jr., ever put upon inquiry by any facts stated in the deed of the sheriff to Cutter. That deed treats Cutter (as has been already suggested), as the sole purchaser of the premises at the sale. It no where alludes to the other assignees. It is true, that the deed refers to the judgment and execution, on which the sale was made; and it may be said, that Smith, Jr., must be presumed to have searched, and was bound to search the records of the court, in order to ascertain the validity of the levy at his peril. Be it so. But the judgment, and execution, and return, would only have informed him, at most, that the sale was made to Shapley, Cushing, and Cutter, not as assignees, but personally; and the deed from the sheriff would have told him, that the sale was to Cutter alone, and on his own account. Under such circumstances, he could have had a full right to presume, that the return was made by a mistake, and that the deed contained the name of the true purchaser, or that Shapley and Cushing had relinquished their own claims to Cutter, and clothed him with all the full rights of a sole proprietor. In either view, Smith could not be affected with any implied notice of any trust; and in fact, as he in his answer states, Cutter asserted himself to be the sole owner, and Smith purchased under him, upon the belief, and in the confidence, that this was true. It may not be immaterial to state, that although by the statutes of New Hampshire in force at the time when the present levy was made, upon a levy and setting off of real estate unincumbered, it was required, that the execution should be recorded in the registry of deeds,—Act July 4, 1829 (St. N. H. 1830, p. 101, c. 6),—yet, upon a levy of an execution on an equity of redemption, no such registry was required,—Act July 3, 1822 (St. N. H. 1830, pp. 104, 105, c. 7.)

It may be suggested, that the defendant (Smith, Jr.,) has not paid the purchase money; but he sets up two claims, either of which, if well founded, would amount to a complete answer; that is to say, a set-off of a claim against Cutter, and a liability to pay the notes to Rice the administrator of Goddard. At all events, the latter ground seems to have a strong foundation, for Goddard took the notes and draft of Smith, Jr., from Cutter in payment of a debt, due to him from Cutter, to a larger amount, without any knowledge of the trust, or that they were not Cutter's own property; and the subsequent transfer of the mortgage to secure the notes by Cutter to Rice, is precisely what a court of equity would have decreed, as the mortgage was but an appendage to the debt due on the notes and draft. Rice, as administrator of Goddard, stands in the predicament, so far as the plaintiff is concerned, of a bona fide holder of the notes and draft, without being affected by any trust for the assignees; and, so far as I have been able to see from the evidence, Smith, Jr., has shown no valid defence against the payment thereof to Rice. In truth, the plaintiff, to sustain nis claim, must make out a clear and indispensable title, both against Smith, Jr., and against Rice, as affected with a clear trust in favor of the assignees, as such. It does not seem to me that such a trust has been sufficiently established, either as against Cutter, or as against Smith or Rice; but if against Cutter, it is certainly not against Smith or Rice. The only possible drawback from this conclusion, seems to be the exceedingly rash, and inconsiderate statements of Smith in his newspaper letter of October 27th, 1840, addressed to Cutter; a letter, by whosoever advised, as impolitic as it was improper, and which has done more to damage the case of Smith than all the other evidence put together. Absurd as it is in some of its suggestions, it does not overcome the other just inferences from the evidence in the case.

Then as to the other point, as to the foreclosure of the mortgage by the Granite Bank, and by Smith, under the title of the bank. First, it is said, that the foreclosure was opened by the payment of $2,000 by Folsom, or by Smith, on the 20th of June, 1836. Now, there is no evidence to show, that the payment was made by Folsom; and indeed it would seem clearly to have been made by Smith, as a part of his purchase money for the debt then due to the bank. But, if it were otherwise, the payment would not have opened the foreclosure, as the argument supposes; for the foreclosure was not then complete under the statute of New Hampshire, then in force, the entry to foreclose having been made on the 28th of September, 1835, and the notice of foreclosure having been first given in the newspapers on the 5th of March, 1836; so that the right of redemption was then running; and of course, like any other payment, only repelled the notion, that the right of redemption was then gone. Then, secondly, it is said, that the conveyance from the bank to Smith, conveys the lands, subject to the condition in the mortgage. This is true; but this in no respect varies the rights of Smith; but leaves the right of redemption as it stood before.

Again, it is said, that the statute foreclosure is not established, because the publication in the newspapers is not established by any copy of the newspapers; but only by the evidence of Burley and Gilman. But it seems to me, that the plaintiff has waived any objection on this head, by his omission to take the objection at an earlier period, when the depositions were taken; and, at all

events, he might have disproved the prima facie evidence on the part of these witnesses, if he had any contradictory evidence. If, however, there were any real difficulty on this point, I would now order the newspapers to be brought into court, and verified on oath, for the satisfaction of the court. But, as I understand the argument, it is not pretended, that the objection is anything more than formal, or that the newspapers would not support the statements of the witnesses. The subsequent advertisement of Smith (senior), on the 12th of October, 1841, for a foreclosure, would not vary his rights or those of Smith, Jr. (the defendant), if the former foreclosure were complete. It might have been done ex majori cautelâ, if the former foreclosure should be held, from any unsuspected cause, inoperative, or insufficient; but it was not a waiver of it.

Let us then see, whether the original foreclosure be or be not complete and conclusive, under the act of New Hampshire of the 4th of July, 1834, c. 165. That act provides, "that, hereafter, no possession of any lands, or tenements, by any mortgagee, or his assigns, shall operate to bar or foreclose the right to redeem said mortgaged premises, or against any person but the mortgagor and his heirs, unless the mortgagee, or other person so in possession, for the purpose of foreclosing the right to redeem, shall, at least, six months before such right to redeem would be foreclosed by the law now in force, give notice in some public newspaper, printed in the county where such premises are situated, or if no newspaper be printed in such county, then in some newspaper printed in Concord, in the county of Merrimack, which notice shall state at what time such possession for condition broken commenced, with the name of the mortgagor and mortgagee, and date of the mortgage, and shall give such description of the premises, as the same are generally known by, and shall be published three weeks successively." By the act of the 29th of July, 1829 (St. N. H. 1830, p. 486, tit. 105), then in force, one year was allowed for redemption, after an entry by the mortgagee for condition broken. It seems to me, that the published notice, set forth in the record, fully complies with all the requisites prescribed by this act; and no effort having been made to redeem the premises until several years afterwards, the foreclosure became complete at the expiration of the year; and Smith, Jr., as assignee of the bank, is entitled to the full benefit thereof, as the absolute owner, both of the equity and of the mortgage.

Upon the whole, my opinion is, that the bill ought to be dismissed, without prejudice. But I think, that it is not a case for costs generally, for any of the parties. The clerk's fees, and the costs of printing the record being for the benefit of all parties ultimately interested, ought to be apportioned among them; and I accordingly direct, that the plaintiff pay one-third thereof; the defendant James Smith, Jr., one-third thereof; and the defendant Charles W. Cutter, one-third thereof; to be taxed by the clerk of this court. I do not think, that any of the other defendants ought, under all the circumstances, to bear any portion of these costs. And I further decree, that, except as to the clerk's fee, and the costs of printing the record, all the parties in the case ought to bear their own costs. A decree will be entered accordingly.